## NATIONAL TRADING CO. v. VULCANITE PORTLAND CEMENT CO.

(Circuit Court of Appeals, Second Circuit. January 7, 1908.)

### No. 117.

SALES—CONTRACT—OFFER AND ACCEPTANCE.

Plaintiff offered to sell defendant cement on certain specified terms. Defendant accepted such offer, with an additional provision that the cement should pass specifications of the department of highways of the borough of Brooklyn, adding that a certain paving company would guarantee defendant's account. Plaintiff, after having received such letter of acceptance, shipped a small portion of the cement, and replied that the contract was acceptable to it, and would become effective as soon as plaintiff received the written guaranty from the paving company, which was never given. *Held*, that the shipment of the cement prior to the sending of plaintiff's last letter did not constitute an unconditional acceptance of the proposition as modified by defendant, and the terms of plaintiff's last letter never having been fulfilled, there was no meeting of minds sufficient to constitute a contract of sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 39–43.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Writ of error to review a judgment of the Circuit Court, Southern District of New York, entered upon the verdict of a jury in favor of the defendant in error who was the plaintiff below. In the following opinion the parties are designated as in the court below.

John C. Wait (G. H. D. Foster, of counsel), for plaintiff in error.
Wm. Forse Scott (W. F. Upson, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The complaint charges breach of contract. It alleges, in substance, that the parties entered into a written agreement for the purchase and sale of cement as stated in three exhibits annexed to and made a part of the complaint, and that the defendant failed to perform its part of such agreement. Upon the trial the plaintiff, to prove the contract, introduced these exhibits in evidence. The trial court charged that the basis of the action was the contract represented by them, and that they should all be treated together to get at the contract. If, then, we find that these exhibits disclose no contract, the plaintiff's case, being founded upon them, fails.

The exhibits are letters between the parties. The first is dated September 4, 1903, and is a proposition from the plaintiff to the defendant. It also bears the defendant's indorsement of acceptance, and, omitting a few unimportant details, reads as follows:

"We quote below our prices and terms to you on Vulcanite Portland Cement, delivered at alongside lighter available pier within lighterage limits

New York Harbor, in quantities, as ordered, not less than 1,000 bbls. at each delivery, nor exceeding 5,000 bbls. within any one calendar month, quantity to which this quotation applies 25,000 bbls., more or less, variation not to exceed 10%.   Shipments not to begin before September 5th, 1903.   Whole amount to be ordered for delivery before June 1st, 1904.   Prices, including packages: In cotton sacks, per bbl. (4 sacks to the bbl.) $1.69.

"Note.—Equivalent to $1.29 net if all bags are returned in good order.

"Invoices will include price of sacks, bags and barrels, and must be paid in full.   Cotton Vulcanite sacks returned to Vulcanite, N. J., freight prepaid, within 90 days from delivery of the cement will be purchased by this company at 10 cents each, if in good condition, but only on the inspection and count of the company at its works.   Barrels and paper bags are not returnable.   This quotation applies only to Vulcanite Portland Cement purchased for delivery as above.   If you do not take within any month the full amount to which you are entitled, this company may deliver to you the following month more than the maximum monthly amount above stated, but it shall not be bound to do so.

"This company reserves the right to cancel the contract if bills are not paid according to terms.   For delays caused by strikes, differences with employés, accidents to machinery, fire, flood, car famine, or other contingencies beyond our control, this company shall not be held responsible.   Terms, net cash 90 days from date of each invoice; 2% discount from net price of cement for cash within 10 days from date of each invoice.

"We send you this proposition in duplicate; upon your returning one of the copies duly accepted in writing received by this company on or before Sept. 8, it shall constitute the contract between us.

                                        "Vulcanite Portland Cement Co.,
                                            "Albert Moyer, Manager.

"Accepted 5th day of September, 1903, at Brooklyn, N. Y., by National Trading Co.,                                        Paul C. Grening, Treas."

The second letter is from the defendant to the plaintiff, is dated September 5, 1903, and accompanied the defendant's acceptance of the plaintiff's proposition.   It follows:

"We accept your proposition of the 4th inst. to sell us 25,000 barrels of cement to be delivered between September 5th and June 1st next at $1.29 per barrel in bags.   Bags to be charged for and credited at 10¢ each.   The cement to pass the specification of the department of highways of the borough of Brooklyn.   The Uvalde Asphalt Paving Company will guarantee the account and make payments to you as per terms in your offer after due certification of the bills by us.   You may ship the first 1,000 barrels to arrive a week from date."

The third letter, from the plaintiff to the defendant and dated September 8, 1903, follows:

"We beg to acknowledge receipt of your favor of Sept. 5th, inclosing contract signed by you for 25,000 barrels, more or less within 10%, of 'Vulcanite' Portland Cement, all of which is to be delivered prior to April 1st, 1904; but not exceeding 5,000 barrels during any one month.   This contract is acceptable to this company, and will become effective as soon as we receive written guarantee from the Uvalde Asphalt Paving Company, guarantying your account as per terms.   First shipment of 1,000 barrels has been made, and is now on the way to you."

The first proposition and the acceptance indorsed thereon, if standing by themselves, undoubtedly would have constituted a contract. There was an offer to sell and its unconditional acceptance.   But both parties agree that the defendant's letter accompanying the acceptance must be treated as a part of it.   So treated, it is clear that the defendant did not unconditionally accept the plaintiff's offer, but made a

counter proposition. It made an additional requirement of quality—the cement must pass the specifications of the Brooklyn Department of Highways. It also stated that the Uvalde Company would guarantee the account. This latter subject was not mentioned in the plaintiff's written proposition but had been spoken of in prior negotiations. When this counter proposition was presented to the plaintiff it replied, as we have seen, that the contract was acceptable to it, and would "become effective as soon as we receive written guarantee from the Uvalde Asphalt Paving Company guarantying your account as per terms." The Uvalde Company never gave the written guaranty, and the plaintiff delivered only the 1,000 barrels of cement which it had shipped before sending its last letter, and for which it was duly paid. Upon this statement it is clear that there was no contract between the parties with respect to the undelivered cement. Manifestly, the plaintiff did not unconditionally agree to the defendant's proposition, and, consequently, there was no meeting of the minds of the parties. Had the plaintiff unconditionally accepted the defendant's terms, there would have been a valid executory contract between them—a promise upon the one side based upon a promise upon the other, with immediate rights of action for failure to perform. But as we have seen the plaintiff did not accept unconditionally. It stated that the contract would be effective when it received the written guaranty, which was equivalent to saying that it would not be effective until it did receive it. Instead of binding itself in reliance upon the defendant's promise to furnish a guarantor, it insisted upon the fulfillment of that promise in writing before it should be bound. It required an act in addition to a promise. It stated a condition precedent to the existence of the contract. As this condition was not complied with, there was no contract.

But while the plaintiff in stating its case based it upon its alleged acceptance in writing, of the defendant's proposition, it now seeks to ignore its second letter. It now claims that it unconditionally agreed to the defendant's terms by shipping the 1,000 barrels of cement before it sent the letter; that, being bound, it could not alter its position by a subsequent letter. Of course, in many cases, the acceptance of an order for goods may be inferred from their shipment. In the present case, however, the defendant's proposition called for the approval of its requirement as to quality. Something more than the shipment of a small portion of the cement was necessary. Certainly, unconditional acceptance cannot be inferred from such an act in the face of a letter written within a day or two imposing conditions. When the question was before it, the plaintiff declined to assume obligations. We cannot now comply with its request to thrust them upon it.

For these reasons, we think that the plaintiff failed to establish any cause of action against the defendant, and that a verdict should have been directed for the defendant.

The judgment of the Circuit Court is reversed.